IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

DR. MINA YUMUKOGLU,

     Plaintiff,

v.                                          No. CIV 99-1245 BB/WWD

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY,

     Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment on All Remaining Claims (Doc. 97), filed February 23, 2001.  Having fully considered the parties' submissions and the relevant authorities, the Court finds that the motion is well-taken and should be GRANTED in full.

## I.
## BACKGROUND

The present diversity action arises from the suspension of benefits under a disability insurance policy issued by Defendant Provident Life & Accident Insurance Company ("Provident") to Plaintiff, Dr. Mina Yumukoglu.  Dr. Yumukoglu's initial claims against Provident included an action for breach of contract as well as several state law tort claims, including breach of the duty of good faith and fair dealing, violation of the New Mexico Unfair Insurance Practices Act, and intentional infliction of emotional distress.  Plaintiff also sought

emotional damages for breach of contract and attorney's fees. In a Memorandum Opinion and Order issued February 2, 2001 (Doc. 93), this Court granted summary judgment to Defendant on each of Plaintiff's tort claims on the grounds that Dr. Yumukoglu failed to demonstrate that Provident terminated his benefits in bad faith. As a result, only Dr. Yumukoglu's breach of contract claim remains.

During the pendency of this litigation, Provident reinstated Dr. Yumukoglu's disability benefits. Provident has also paid Dr. Yumukoglu past benefits and interest. Thus, the only question before the Court is whether Dr. Yumukoglu is entitled to emotional damages and attorney's fees based on Provident's acknowledged breach of contract. In great part, this question is grounded in choice of law. While it is clear that in Louisiana, the state in which the contract was issued, damages for emotional distress and attorney's fees are not recoverable for a breach of contract, the issue is not so crystalline in New Mexico, the state in which this action was filed and in which Dr. Yumukoglu now resides.

In their Pretrial Order (Doc. 60), the parties stipulated to the following: "Louisiana law controls issues concerning the interpretation of the [disability insurance] policy, and New Mexico law controls all other substantive law questions." The question of what constitutes "interpretation" of the policy is now in dispute. Provident contends that a contract's interpretation includes the question of what remedies are available for its breach, an inquiry properly resolved according to the law of the state in which the contract was issued. Assuming, *arguendo*, Provident's choice of law theory is correct, Louisiana law applies and Dr. Yumukoglu is not entitled to either emotional damages or attorney's fees. Dr. Yumukoglu's arguments are twofold. First, he contends that the word "interpretation" as used in the Pretrial Order narrows

the application of Louisiana law to the present dispute to encompass only the meaning of the language used in the contract.[1]  Pursuant to this argument, the Pretrial Order dictates that the Court apply New Mexico law.  Second, Dr. Yumukoglu argues that, the terms of the Pretrial Order aside, New Mexico choice of law rules compel the application of New Mexico law to the question of whether Dr. Yumukoglu is entitled to emotional damages and attorney's fees.

For the reasons set forth below, the Court agrees with Defendant that, under New Mexico choice of law jurisprudence, Louisiana law governs the question of remedies available for breach of contract.  In the alternative, the Court finds that should New Mexico law apply, Plaintiff would be entitled neither to emotional damages nor attorney's fees on his breach of contract claim.

## II.
## DISCUSSION

### A.   Plaintiff's Available Remedies for Breach of Contract Are Controlled by Louisiana Law

In making a choice of law determination, a federal court sitting in diversity must apply the substantive law, including the choice of law provisions, of the forum state.  Elec. Distrib., Inc., v. SFR, Inc., 166 F.3d 1074, 1083 (10th Cir. 1999) (citing Klaxan Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  It is therefore beyond dispute that New Mexico choice of law principles apply to the present case.

---

[1]For example, the parties agreed that the rights generated by the policy's Incontestability Clause were a matter of contract interpretation properly governed by Louisiana law.  See February 2, 2001 Memorandum Opinion and Order (Doc. 93).

1.      **Impact of the Pretrial Order**

Initially, the Court must address the threshold question of whether the parties' Pretrial Order alters the natural result under New Mexico choice of law rules.  As stated above, the parties have agreed in the Pretrial Order that "Louisiana law controls issues concerning the interpretation of the policy, and New Mexico law controls all other substantive law questions." The issue is what, precisely, the parties intended by "interpretation" of the contract.

Technically, a contract's "interpretation" is narrower than its "construction":

> Although these two words are most often used synonymously, a distinction between them does exist.  Through "interpretation" of a contract, a court determines what meaning the parties, when contracting, gave to the language used.  Through "construction" of a contract, a court determines the legal operation of the contract--its effect upon the rights and duties of the parties.  In accordance with this distinction, the construction of a contract begins with the interpretation of its language but does not end with it, while the process of interpretation stops wholly short of a determination of the legal relations of the parties.

5 Margaret N. Kniffin, Corbin on Contracts § 24.3 (Rev. ed. 1998).  Similarly, Black's Law Dictionary distinguishes the term "interpretation" from the term "construction":  "In the strict usage of this term, 'construction' is a term of wider scope than 'interpretation'; for, while the latter is concerned only with ascertaining the sense and meaning of the subject-matter, the former may also be directed to explaining the legal effects and consequences of the instrument in question.  Hence interpretation precedes construction, but stops at the written text."  <u>See</u> Black's Law Dictionary 566 (6th ed. 1990).

While legal scholars have recognized a technical distinction, it is well accepted that the two terms are "commonly used interchangeably."  Black's Law Dictionary at 566.  As stated in <u>Corbin</u> § 24.3, <u>supra</u>:  "Rarely do courts articulate this distinction.  Iowa, New Jersey, and

Washington are among the few jurisdictions in which it is recognized.  Much more widespread is

the interchangeable use of the terms."  Because Corbin characterizes the synonymous use of the

terms as the "overwhelmingly common practice of courts authoring opinions today," the treatise

itself does not employ the distinction.  Id.  While New Mexico has not specifically addressed the

scope of "interpretation" as opposed to "construction,"  New Mexico courts appear to use the

words interchangeably.  See, e.g., Shope v. State Farm Ins. Co., 122 N.M. 398, 400, 925 P.2d

515, 517 (N.M. 1996) (court's "interpretation" of insurance contract included an analysis of

states' public policy with respect to stacking of uninsured motorist benefits); Crow v. Capitol

Bankers Life Ins. Co., 119 N.M. 452, 456, 891 P.2d 1206, 1210 (N.M. 1995); Rodriguez v.

Windsor Ins. Co., 118 N.M. 127, 133, 879 P.2d 759, 765 (N.M. 1994).  The Tenth Circuit has

also employed the terms synonymously.  See, e.g., Local No. 7 United Food and Commercial

Workers Intern. Union v. King Soopers, 222 F.3d 1223, 1226 (10th Cir. 2000); Brown v. Royal

Maccabees Life Ins. Co., 137 F.3d 1236, 1242 (10th Cir. 1998); SBKC Service Corp. v. 1111

Prospect Partners, L.P., 105 F.3d 578, 581 (10th Cir. 1997).

At best, the use of the word "interpretation" in the parties' Pretrial Order is ambiguous.

From the Plaintiff's standpoint, it is credible that the term "interpretation," as opposed to

"construction,"  was consciously chosen by Plaintiff to limit the application of Louisiana law to the

explicit language of the contract.  Conversely, given that "interpretation" and "construction" are

commonly used interchangeably, Defendant may rationally have understood "interpretation" to

include the determination of Plaintiff's legal rights.  Faced with this ambiguity, the Court must

attempt to determine the intent of the parties.  Medina v. Sunstate Realty, Inc., 119 N.M. 136,

138, 889 P.2d 171, 173 (N.M. 1995) ("When interpreting a contract, [New Mexico courts] give

force and effect to the intent of the parties"). See also Corbin, supra, § 24.20. The most logical

reading of the Pretrial Order is that the parties, in briefly stating the law applicable to their

dispute, intended only to summarize New Mexico's conflict of law rules:  i.e., while New Mexico

law controls a plaintiff's tort claims, a plaintiff's contractual rights are determined by the law of

the state where his insurance contract was executed. See Shope, 122 N.M. at 400, 925 P.2d at

517. It is unlikely that, without more detailed explanation, the parties intended to alter their legal

rights as prescribed by New Mexico law. The Court thus finds that the answer to the question of

whether New Mexico or Louisiana law governs Dr. Yumukoglu's available remedies for breach of

contract is properly grounded in New Mexico choice of law jurisprudence and not in the language

of the Pretrial Order.

## 2.    New Mexico Choice of Law Principles

The policy of New Mexico is to interpret insurance contracts under the law of the state in

which the contract was executed. Sheppard v. Allstate Ins. Co., 21 F.3d 1010, 1012 (10th Cir.

1994); Grisham v. Allstate Ins. Co., 128 N.M. 340, 341, 992 P.2d 891, 892 (N.M. App. 1999);

Shope v. State Farm Ins. Co., 122 N.M. 398, 400, 925 P.2d 515, 517 (N.M. 1996); State Farm

Mut. Ins. Co. v. Conyers, 109 N.M. 243, 247, 784 P.2d 986, 990 (N.M. 1989). See also Choice

of Law in the American Courts in 1998:  Twelfth Annual Survey, 47 Am. J. Comp. L. 327, 340

41 (Spring 1999) ("In contract conflicts, the New Mexico Supreme Court did at one point ponder

whether to abandon the lex loci contractus rule[2] but has recently applied it without discussion[3]").

Courts have found an exception to this conflict of laws rule when the law of a foreign state

---

[2]Citing Conyers, 109 N.M. at 247, 784 P.2d at 990.

[3]Citing Shope, 122 N.M. at 400, 925 P.2d at 517.

violates a fundamental principle of New Mexico public policy.  Reagan v. McGee Drilling Corp.,

123 N.M. 68, 70, 933 P.2d 867, 869 (N.M. Ct. App. 1997); Shope, 122 N.M. at 400, 925 P.2d at

517; Conyers, 109 N.M. at 248, 784 P.2d at 991.  See also Estate of Gilmore, 124 N.M. 119,

124, 946 P.2d 1130, 1135 (N.M. Ct. App. 1997); Torres v. State, 119 N.M. 609, 613, 894 P.2d

386, 390 (N.M. 1995) (in a tort action, court will not follow the standard doctrine of lex loci

delicti "if such application would violate New Mexico public policy").  The New Mexico Court of

Appeals has summarized New Mexico choice of law jurisprudence as follows:  "We perceive New

Mexico conflict-of-law doctrine as reflecting a desire for the greater certainty presumably

provided by more traditional approaches to conflict-of-law problems, tempered by recognition

that important policy considerations cannot be ignored."  Gilmore, 124 N.M. at 125, 946 P.2d at

1136.

        The parties do not contend that the application of Louisiana law to the present

controversy would offend New Mexico public policy.  Therefore, the question before the Court is

whether the doctrine of lex loci contractus, as applied by New Mexico, includes the determination

of what remedies are available for a contract's breach.  New Mexico courts have not specifically

spoken to this issue.

        Although New Mexico has not definitively embraced the Restatement (Second) of Conflict

of Laws ("Restatement") with respect to choice of law issues in either contract or tort, see

Gilmore, 124 N.M. at 125, 946 P.2d at 1136, New Mexico courts have often relied on the

rationale of the Restatement and have, with very little exception, reached an identical result.  See

id.; Reagan, 123 N.M. at 70, 933 P.2d at 869; Conyers, 109 N.M. at 246-47, 784 P.2d at 989-

990; but see Torres, 119 N.M. at 613, 894 P.2d 390 (applying approach consistent with

Restatement but reaching a different result on grounds of public policy).  It is therefore

appropriate that this Court look to the Restatement for guidance.  Like New Mexico, the default

rule of the Restatement is to determine the rights created under an insurance contract pursuant to

the law of the state in which the contract was issued:

> The validity of a life [or disability] insurance contract issued to the insured upon
> his application and the rights created thereby are determined, in the absence of an
> effective choice of law by the insured in his application, by the local law of the
> state where the insured was domiciled at the time the policy was applied for, unless
> with respect to the particular issue, some other state has a more significant
> relationship under the principles stated in § 6 to the transaction and the parties, in
> which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 192 and cmt. l.[4]

---

[4]Dr. Yumukoglu argues that, under the Restatement (Second) approach, the Court should
apply New Mexico law pursuant to the Restatement's "significant relationship" test.  The Court
finds that the significant relationship approach does not alter the natural choice of Louisiana law.
Under § 6 of the Restatement (Second), which defines the significant relationship test, the
following factors are relevant to the determination of the applicable law:

> (a)  the needs of the interstate and international systems,
> (b)  the relevant policies of the forum,
> (c)  the relevant policies of other interested states and the relative interests of
>       those states in the determination of the particular issue,
> (d)  the protection of justified expectations,
> (e)  the basic policies underlying the particular field of law,
> (f)  certainty, predictability, and uniformity of result, and
> (g)  ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6.  Because New Mexico has yet to squarely address
the question of whether emotional damages and attorney's fees are recoverable for breach of an
insurance contract, it cannot be said at this point that the state has expressed a relevant policy on
this issue.  This is only strengthened by the Court's conclusion, as discussed below, that New
Mexico would *not* permit such recovery.  As to the protection of justified expectations,
predictability of result, and ease of application, all of these factors weigh in favor of the default
choice of law rule:  applying the law of the state in which the contract was executed.

The Restatement (Second) further provides in § 207 that "the measure of recovery for a breach of contract is determined by the local law of the state selected by the application of the rules of [the relevant Restatement section]."  Thus, both the rights created under a contract and the measure of recovery for the contract's breach are governed by the same law.  Although the large majority of cases citing § 207 address the issue of whether a plaintiff may recover prejudgment interest[5], courts that have applied the Restatement to less traditional measures of recovery for breach of contract have determined that both punitive damages and attorney's fees fall within the section's scope.  See Power Motive Corp. v. Mannesmann Demag Corp., 617 F.Supp. 1048, 1049-1050 (D. Colo. 1985) (application of Restatement (Second) § 207 included determination that, under Ohio law, punitive damages were not recoverable for breach of contract); Aries v. Palmer Johnson, Inc., 153 Ariz. 250, 258, 735 P.2d 1373, 1381 (Ariz. App. Div. 2 1987) (recovery of attorney's fees is a form of damages to be determined by principles set forth in Restatement (Second)).  The Court finds that emotional damages, like punitive damages, is an award that falls within the "measures of recovery" available for breach of contract.

To the extent that New Mexico courts have addressed the scope of the lex loci contractus rule, it appears likely that New Mexico's application of that rule would achieve the same result as that reached under the Restatement.  Not surprisingly, the majority of New Mexico cases involving the determination of rights under an insurance contract concern the interpretation, as that word is technically and narrowly defined, of specific language of the contract.  See, e.g. Grisham, 128 N.M. at 342, 992 P.2d at 893; State Farm Auto. Ins. Co. v. Ovitz, 117 N.M. 547,

---

[5]See, e.g., Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 614 (2d Cir. 1996); Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 920 (10th Cir. 1993); Emerson Elec. Co. v. Crawford & Co., 963 S.W.2d 268, 272 (Mo. App. E.D. 1997).

549, 873 P.2d 979, 999 (N.M. 1994).  However, <u>Shope v. State Farm Ins. Co.</u> demonstrates that

the lex loci contractus rule includes the determination of the parties' legal rights and duties under

the contract:  i.e., "interpretation" as used by the New Mexico Supreme Court applies to the full

construction of the parties' contractual rights and not merely the analysis of explicit contract

terms.  122 N.M. at 399-401, 925 P.2d at 516-518.  <u>Shope</u> involved a family residing in New

Mexico whose son was struck and killed in New Mexico by an uninsured motorist.  The Shopes

sued the insurance carrier under an insurance policy purchased and issued in Virginia.  The

primary question before the Supreme Court was whether the contract permitted the stacking of

uninsured motorist coverage.[6]  Applying the rule of lex loci contractus, the Supreme Court found

that "whether stacking is proper is...a question of *contract interpretation*, not one of fundamental

interests, and therefore governed by Virginia law." 122 N.M. at 401, 925 P.2d at 518 (emphasis

added).  The Supreme Court's "interpretation" of the insurance contract included the application

of Virginia public policy with respect to stacking of uninsured motorist coverage, an analysis

which extends beyond the interpretation of specific contractual language.  <u>Shope</u> therefore

indicates, in accordance with the Restatement Second, that the application of foreign contract law

includes the determination of parties' legal rights under a contract.  <u>See also</u> <u>Sheppard v. Allstate</u>

<u>Ins. Co.</u>, 21 F.3d 1010, 1015 (10th Cir. 1994) (in an insurance dispute brought in New Mexico

under a North Carolina contract, North Carolina law of estoppel governed question of whether

insurance company was estopped from denying plaintiff's coverage).

---

[6]Stacking of insurance coverage is generally proper under New Mexico law but is
disfavored under Virginia law.  <u>See</u> <u>Shope</u>, 122 N.M. at 400-401, 925 P.2d at 517-518.

For these reasons, the Court finds the question of whether Dr. Yumukoglu is entitled to emotional damages and attorney's fees under his breach of contract claim is governed by Louisiana law.  The parties do not contest that, in the absence of bad faith by the insurer, Louisiana law precludes the recovery of both emotional damages and attorneys fees in an action for breach of contract.  See Casey v. Panalpina, Inc., 1999 WL 39520, *1 (E.D. La. January 29, 1999); Perry v. State Farm Fire & Cas. Co., 700 F.Supp. 306, 307 (M.D. La. 1988); Nickels v. Guarantee Trust Life Ins. Co., 563 So.2d 924, 927, 928 (La. Ct. App. 1990); Bye v. American Income Life Ins. Co., 316 So.2d 164, 166-167 (La. Ct. App. 1975).  Accordingly, Defendant is entitled to summary judgment.

**B.**     **New Mexico Law Precludes Recovery for Emotional Damages and Attorney's Fees**

In the alternative, the Court finds that should New Mexico law apply to the determination of Dr. Yumukoglu's available remedies for breach of contract, neither emotional damages nor attorney's fees are recoverable.  New Mexico law regarding the availability of emotional damages for breach of an insurance contract is not so well-settled as in Louisiana.  However, the Tenth Circuit has concluded that emotional damages are not a proper remedy in New Mexico for breach of contract, absent exigent circumstances:  "[E]motional distress is not recoverable under a contract claim, unless the breach causes bodily harm, or unless the contract or the breach is of such a kind that serious emotional disturbance is a particularly likely result."  Woodmen Life & Accident Insurance Co. v. Bryant, 784 F.2d 1052, 1056-57 (10th Cir. 1986) (citing Restatement (Second) of Contracts § 353).  "While there is no New Mexico precedent on this issue, the majority of jurisdictions agree with this provision."  Id. (citations omitted).  The New Mexico Supreme Court has found emotional damages for breach of contract appropriate in one specific

-11-

circumstance: contracts for the provision of funeral and burial services. Flores v. Baca, 117

N.M. 306, 311, 314, 871 P.2d 962, 967, 970 (N.M. 1994). Flores, which cites Woodmen with

approval, recognizes that burial contracts are specifically the type of exceptional circumstance for

which emotional damages may be recoverable:

> Contracts for funeral and burial services are imbued by the very nature of their
> subject with certain expectations to be implied in fact unless specifically
> disclaimed. It is to be expected that damages for cognizable harm to the ordinary
> emotional sensibilities of any family member, in general, and known emotional
> sensibilities, in particular, will be recoverable for a breach of the funeral provider's
> obligation to exercise reasonable skill and care. Consolation being the aim of a
> contract for funeral services, what else would result from a breach of the
> agreement but mental anguish?

117 N.M. at 311, 871 P.2d at 967 (citations omitted). This position is identical to that taken in

the Restatement (Second) of Contracts. See § 353, cmt. a (among the "exceptional

circumstances" where damages for emotional disturbance are recoverable are contracts for "the

carriage or proper disposition of dead bodies"). By contrast, insurance contracts are designed to

protect pecuniary, as opposed to mental, well-being. They do not present the "exceptional

circumstance" contemplated by Flores and the Restatement (Second). See, e.g., Nickels v.

Guarantee Trust Life Ins. Co., 563 So.2d 924, 927 (La. Ct. App. 1990) (emotional damages are

not recoverable under an insurance contract because the "object of a contract of insurance is the

payment of money").

   The Court agrees with Provident that Dr. Yumukoglu has not cited (as apparently none

exist) any New Mexico cases supporting his proposition that emotional damages can be recovered

for breach of an insurance contract in the absence of bad faith. Nor has Dr. Yumukoglu pointed

the Court to any New Mexico statute or case law suggesting he is entitled to attorney's fees.

-12-

Statutory attorney's fees are authorized in favor of the insured upon a finding that the insurance company has acted in bad faith.  NMSA § 39-2-1 (Michie 1978, Repl. Pamp. 1991).  However, as this Court held in its February 2, 2001 Memorandum Opinion and Order, this is not a case of bad faith.  The Court therefore finds that, under New Mexico law, Dr. Yumukoglu would be entitled neither to emotional damages nor attorney's fees for his breach of contract claim.

## III.
## CONCLUSION

For the reasons set forth above, the Court finds that Louisiana law controls the question of whether Plaintiff is entitled to recover emotional damages and attorney's fees in his breach of contract action.  Louisiana law prohibits such recovery.  In the alternative, the Court finds that emotional damages and attorney's fees would not be recoverable under New Mexico law for breach of an insurance contract absent bad faith by the insurer.  Defendant's Motion for Summary Judgment on All Remaining Claims is thereby GRANTED in full.  An order in conjunction with this memorandum will issue.

Dated at Albuquerque this 30th day of May, 2001.

BRUCE D. BLACK
United States District Judge

-13-

**Attorneys:**

For Plaintiff:
      Keith F. Franchini, Albuquerque, NM
      L. Edward Glass, Albuquerque, NM

For Defendant:
      Thomas L. Johnson, Albuquerque, NM